**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

JOSEPH L. GALIMIDI,

               Plaintiff,

   v.

SANOFI US SERVICES INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI S.A., and
PUBLIX SUPER MARKETS, INC.,

               Defendants.

Case No. _____

**DEFENDANTS SANOFI US SERVICES INC.'S
AND SANOFI-AVENTIS U.S. LLC'S NOTICE OF REMOVAL**

      Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC (collectively, "the Removing Defendants") hereby give notice of removal of this action, *Galimidi v. Sanofi US Services, Inc., et al.*, No. 2019-027190-CA-01, from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, where the action is now pending, to the United States District Court for the Southern District of Florida. As grounds for removal, the Removing Defendants state as follows:

**INTRODUCTION**

      1.      On September 13, 2019, Plaintiff filed his Complaint against Defendants in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. In his Complaint, Plaintiff alleges that he has been harmed as a result of ingesting Zantac, an over-the-counter medication for treating heartburn, stomach ulcers, gastroesophageal reflux disease, and other conditions causing excess stomach acid.

2. Plaintiff alleges that the Removing Defendants and Sanofi S.A. are the manufacturers of Zantac. Compl. ¶¶ 19, 25, 30. The Removing Defendants and Sanofi are not citizens of Florida for diversity purposes. *See id.* ¶¶ 18, 24, 29.

3. Plaintiff names Publix as a defendant in its role as a pharmacy. *Id.* ¶ 37. Publix is alleged to be a citizen of Florida for diversity purposes. *Id.* ¶ 36.

4. As further explained below, Publix is fraudulently joined in this case, and therefore its citizenship must be ignored for purposes of diversity jurisdiction.

5. First, Plaintiffs' claims against Publix are preempted because, as a mere distributor, Publix lacks the legal authority under FDA regulations to alter Zantac's government-approved labeling. *See, e.g.*, *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 2012 WL 181411, at *3 (D.N.J. Jan. 17, 2012); *Pierik v. GE Healthcare Inc.*, No. 1:18-CV-07733, 2019 WL 4686551, at *1 (N.D. Ill. June 18, 2019); *Smith v. GE Healthcare, Inc.*, 2019 WL 4565246 (W.D. La. Sept. 4, 2019); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, No. 309-MD-02100-DRH-PMF, 2014 WL 1632149, at *6 (S.D. Ill. Apr. 24, 2014).

6. Second, Plaintiff does not state a claim against Publix, which he sues on the sole basis that the Plaintiff purchased "at least some" of his Zantac from Publix. Compl. ¶ 70. The bare allegation that Plaintiff may have purchased some *de minimis* amount of Zantac from Publix does not suffice. *See, e.g., Lohrmann v. Pittsburg Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986). Plaintiff's undifferentiated, "shotgun" pleading, which fails to supply any liability allegations specific to Publix, further underscores the lack of any real claim against it. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018); *Gazzola v. NCL (Bahamas) Ltd.*, No. 19-21535-CIV, 2019 WL 3067506, at *1 (S.D. Fla. July 12, 2019); *In re*

*Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL No. 1047, No. C02-423R, 2002 WL 34418423, at *2-3 (W.D. Wash. Nov. 27, 2002).

7. Because Publix is fraudulently joined, jurisdiction over this case is accordingly proper based on complete diversity between Plaintiff and all properly joined defendants.

## BASIS FOR REMOVAL

8. The Removing Defendants remove this action on the basis of diversity jurisdiction pursuant to 28 U.S.C §§ 1332, 1441, and 1446 and the doctrine of fraudulent joinder.

9. This Court has subject matter jurisdiction under 28 U.S.C § 1332(a) because: (1) there is complete diversity between Plaintiff and the properly joined defendants; (2) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (3) all other requirements for removal have been satisfied.

**I.      There Is Complete Diversity Between Plaintiff and the Properly Joined Defendants.**

10. The Complaint alleges that Plaintiff resides in Florida. Compl. ¶ 13. Based on the allegations in the Complaint, Plaintiff is, therefore, a citizen of Florida.

11. The properly joined defendants are all citizens of states other than Florida.

12. Defendant Sanofi US Services Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in New Jersey. Sanofi US Services Inc. is, therefore, a citizen of Delaware and New Jersey**.**

13. Defendant Sanofi-Aventis U.S. LLC is a limited liability company organized under Delaware law. The sole member of Sanofi-Aventis U.S. LLC is Sanofi US Services Inc., a Delaware corporation with its principal place of business in New Jersey. Defendant Sanofi-Aventis U.S. LLC is, therefore, a citizen of Delaware and New Jersey.

14. Defendant Sanofi S.A. is a French multinational pharmaceutical company headquartered in Paris, France. Sanofi S.A. is, therefore, a citizen of France.

15. Defendant Publix is fraudulently joined. Therefore, its citizenship must be ignored for purposes of determining the propriety of removal.

16. Because Plaintiff is a citizen of Florida and the properly joined defendants are citizens of states other than Florida, complete diversity of citizenship exists between Plaintiff and the properly joined defendants. *See* 28 U.S.C. §§ 1332, 1441.

## II.     Defendant Publix Is Fraudulently Joined.

17. Defendant Publix is fraudulently joined, and its Florida citizenship should therefore be disregarded for purposes of removal.

18. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). A court will ignore a fraudulently joined defendant's citizenship for purposes of determining diversity when no viable cause of action has been stated against it. *See Shannon v. Albertelli Firm, P.C.*, 610 Fed. App'x. 866, 870 (11th Cir. 2015); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

19. Here, Publix is fraudulently joined because: (1) Publix, as a mere distributor of Zantac, lacks the power to change the warning label of an FDA-approved medication, and the claims against it are accordingly preempted; and (2) Plaintiff does not plead tortious conduct on the part of Publix sufficient to show that Publix's actions were a proximate cause of his alleged injury.

### A. Plaintiff's Claims Against Publix Are Preempted.

20. Plaintiff's claims against Publix are preempted by federal law because Publix, as a mere distributor, lacks authority to change product labeling. Indeed, numerous federal courts have held that failure-to-warn claims asserted against pharmaceutical distributors are preempted because pharmaceutical distributors cannot change approved product labeling. *See, e.g.*, *In re Fosamax,* 2012 WL 181411, at *3 ("As a distributor of Fosamax, Watson has no power to change Fosamax labeling. That power lies with the applicant who filed the New Drug Application (NDA) seeking approval to market Fosamax."); *Pierik*, 2019 WL 4686551, at *1 ("As McKesson is alleged to be a distributor rather than a manufacturer of Omniscan and MultiHance, I cannot draw a reasonable inference that McKesson had the ability to modify the warning labels of those drugs. Plaintiffs' claims against McKesson are preempted . . . ."); *Smith*, 2019 WL 4565246 (finding failure-to-warn claims preempted because "McKesson has no authority to unilaterally change or add to the Omniscan labeling" as a pharmaceutical distributor); *In re Yasmin & Yaz*, 2014 WL 1632149, at *6 ("Under applicable federal regulations, generic distributors have no more authority than generic manufacturers to alter a drug's composition, label, or design. Accordingly, the principles announced in *Mensing* . . . are equally applicable to generic distributors.").

21. These cases follow the rationale that the Supreme Court articulated in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011). In that case, the Supreme Court clarified the preemption doctrine as it relates to manufacturers of generic drugs. Plaintiffs had brought product liability actions against manufacturers of generic prescription drugs. *Mensing*, 131 S. Ct. at 2573. The manufacturers argued that, under federal drug regulations, they are "prevented [ ] from independently changing their generic drugs' safety labels." *Id.* at 2577. Consequently, they

-5-

argued, holding them liable under state law for failure to "adequately and safely label their products," would directly conflict with labeling requirements under federal law. *Id*. The Supreme Court agreed: Because generic manufacturers are unable to comply with both state and federal law, state failure-to-warn claims against generic drug manufacturers must be preempted. *Id*. at 2577-78, 2581 ("If the Manufacturers had independently changed their labels to satisfy their state-law duty [to attach a safer label], they would have violated federal law.").

22.     The same preemption analysis that the Supreme Court articulated in *Mensing* bars claims against pharmaceutical distributors that stand even further removed than generic manufacturers from the ability to change drug labeling that the U.S. Food and Drug Administration ("FDA") has approved. Only the party that submits the New Drug Application (the "NDA") to obtain FDA approval to market a drug can seek to change the drug's labeling after initial approval.[1]  21 C.F.R. § 314.71(a); *id*. § 314.70(a)(4) ("The applicant must promptly revise all promotional labeling and advertising to make it consistent with any labeling change implemented . . . ."). Here, Publix was not the applicant for the Zantac NDA. It was solely a

---

[1]     Major labeling changes require the FDA's prior approval through submission of a Prior Approval Supplement ("PAS"). 21 C.F.R. § 314.70(b). Certain other changes may be made without advanced FDA approval through the Changes Being Effected ("CBE") regulations. 21 C.F.R. § 314.70(c). The federal regulations make clear that only the NDA holder can apply for these supplemental changes. 21 C.F.R. § 314.70(a) (requiring "the applicant" and "holder of an approved application" to submit changes to the FDA); *id*. § 314.70(b)(3) ("The applicant must obtain approval of a supplement from FDA [for major changes under the PAS procedure]."); *id*. § 314.70(c)(6) ("[T]he holder of an approved application may commence distribution of the drug product involved upon receipt by the agency of the supplement for the change [under the CBE procedure].") (emphases added). *See Mensing*, 131 S. Ct. at 2575 ("The FDA denies that the [generic] Manufacturers could have used the CBE process to unilaterally strengthen their warning labels. . . . We defer to the FDA's interpretation of its CBE and generic labeling regulations.") (citations omitted); *see also* 21 U.S.C. § 355(o)(4)(A) (FDA contacts the brand-name manufacturer to initiate safety changes in drug labeling).

distributor that sold products manufactured by other parties. Therefore, it had no authority to seek any changes to the drug's labeling.[2]

23. Indeed, had Publix warned about risks not included in Zantac's approved product labeling, Publix would have been subject to potential civil and/or criminal penalties for "misbranding." 21 U.S.C. §§ 333, 334.

24. FDA regulations on misbranding prohibit any person, including a pharmaceutical distributor, from issuing any warning that is not consistent with the drug's FDA-approved labeling. 21 C.F.R. § 201.100(d)(1). Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* (the "FDCA"), when FDA approves a drug for marketing, it also approves the drug's labeling, including information about the drug's potential risks and benefits. 21 U.S.C. § 355(d). All other materials disseminated by pharmaceutical distributors about a drug's risks and benefits, including promotional materials and "Dear Doctor" letters, must be "consistent with and not contrary to . . . the approved or permitted labeling."[3] 21 C.F.R. § 201.100(d)(1); 73 Fed. Reg. 2848, 2850 n.3 (2008) ("Federal law governs not only what information must appear in labeling, but also what information may not appear.").

25. The FDCA and its implementing regulations provide that a drug is misbranded if its labeling is "false and misleading in any particular." 21 U.S.C. § 352(a); *id*. § 321(n); *id.* § 331(a), (b), (k); 21 C.F.R § 201.6(a). A statement about a drug's risks would be considered

---

[2]   FDA, Drugs@FDA Glossary of Terms, http://www.fda.gov/Drugs/informationondrugs/ucm079436.htm (last visited Oct. 17, 2019) ("Company: The company (also called applicant or sponsor) submits an application to FDA for approval to market a drug product in the United States.").

[3]   21 U.S.C. § 321(m) (labeling includes "all labels and other written, printed, or graphic matter"); 21 C.F.R. § 1.3 (same). Thus, the term "labeling" includes more than the printed package insert.

"false and misleading" if FDA has not found it to be properly substantiated. 40 Fed. Reg. 28,584 (1975) ("In short, a drug is misbranded if its labeling makes claims that have not been properly substantiated."). By definition, an unapproved warning by a distributor that is inconsistent with the approved drug labeling would not have been found to be substantiated by FDA and, thus, would likely constitute misbranding.

26. While Plaintiff's vague, shotgun pleading makes it difficult to discern which legal theories he asserts against which defendants, it would be implausible and illogical for Plaintiff to claim that Publix, whose only alleged role is as a distributor of Zantac, *see* Compl. ¶ 36, should be liable under a design defect or manufacturing defect theory. Publix did not design or manufacture the product and is not alleged to have any authority to design or manufacture the product differently. In any case, such claims would also be preempted for the same fundamental reasons, namely that Publix had no authority under FDA regulations to make changes to those highly regulated processes. *See Mut. Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466, 2470 (2013) (citing 21 U.S.C. §§ 355(j)(2)(A)(ii)–(v) and (8)(B); 21 C.F.R. § 320.1(c)).[4]

27. In short, Publix, which is alleged to be a mere distributor of Zantac, cannot be liable under the state law theories asserted in the Complaint. Publix lacked any ability to alter Zantac labeling, and to subject Publix to liability here would conflict directly with federal law

---

[4] Plaintiff's negligence and warranty claims are simply restatements of their failure-to-warn claims under a different guise, *see* Compl. ¶¶ 74, 79, 121, 126, 127, and are preempted for the same reasons explained above. *See Allbright v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 1321, 1331 (S.D. Fla. 2017) (holding negligence claim based in a failure-to-warn or design theory was preempted by federal law, following *Mensing*); *Thiel v. Wyeth Inc.*, No. 6:10-CV-1304-ORL-36-GJK, 2012 WL 12932936, at *4 (M.D. Fla. Nov. 6, 2012) (similar); *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1292 (M.D. Fla. 2011) (similar, dismissing negligence and warranty claims, among others), *aff'd,* 719 F.3d 1245 (11th Cir. 2013).

governing drug approval.  Plaintiff's state law claims against Publix are therefore preempted.  Without any viable claims asserted against it, Publix is not a properly joined party in this action.[5]

### B. Plaintiff Insufficiently Pleads His Allegations Against Publix.

28. The Complaint lacks any specific facts or allegations against Publix that would give rise to liability under Florida law.  To the contrary, Plaintiff pleads no facts about when or how much Zantac he purchased from Publix, except to say "at least some"—conveying that he purchased no more than a minimal amount of the drug from Publix.  *See* Compl. ¶ 70.

29. Causation is a required element of each of Plaintiff's claims.  *See, e.g.*, *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (negligence); *Godelia v. Doe 1*, 881 F.3d 1309, 1318 (11th Cir. 2018) (strict liability claim); *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 640 (S.D. Fla. 2010) (breach of warranty claim); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) (fraud claim).

30. In order to adequately allege causation, a plaintiff must plead facts that could "afford[] a reasonable basis for the conclusion that it is more likely than not that the conduct of

---

[5] In *In re Abilify (aripiprazole) Products Liability Litigation*, 3:16-MD-2734, 2018 WL 6258903, at *5 (N.D. Fla. Nov. 8, 2018), the court noted the "conceptual, and frankly, practical appeal" of the same argument we make here that a pharmaceutical distributor was fraudulently joined.  While the court in *Abilify* remanded that case to state court, it did so by incorrectly relying on precedent applicable to federal-question jurisdiction to hold that an affirmative defense cannot serve as the basis for removal.  In fact, dispositive affirmative defenses such as preemption routinely serve as the basis for a fraudulent joinder finding in cases removed on the basis of diversity jurisdiction.  *See Florence v. Crescent Res., LLC,* 484 F. 3d 1293, 1298 n.3 (11th Cir. 2007) ("We have acknowledged that, under some circumstances, application of an affirmative defense can support a finding of fraudulent joinder); *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006) (evaluating affirmative defense of statute of limitations to assess whether defendant was fraudulently joined).

the defendant was *a substantial factor* in bringing about the result." *Reynard v. NEC Corp.*, 887 F. Supp. 1500, 1504 (M.D. Fla. 1995) (citation omitted) (emphasis added).

31. "[M]ore than a causal or minimum contact with the [defendant's] product" is required for causation. *Lohrmann*, 782 F.2d at 1162. That is, a "*de minimis* [use]" does not "satisf[y] the substantial . . . factor test." *Krik v. Crane Co.*, 76 F. Supp. 3d 747, 753 (N.D. Ill. 2014). Florida law is consistent with this precedent. *See Hetzner v. R.J. Reynolds Tobacco Co.*, 2010 WL 10076163, at *1 (Fla. 7th Cir. Ct. Apr. 26, 2010) ("The court totally rejects the supposition that . . . de minimis use during the course of a ten or twenty year period would have any scientific or legal basis to change the course of any medical outcome in this case."), *aff'd Hetzner v. Lorillard Tobacco Co.*, 81 So. 3d 641 (Fla. 5th DCA 2012) (per curiam); *see also Howard ex rel. Estate of Ravert v. A.W. Chesterton Co.*, 78 A.3d 605, 608 (Pa. 2013) ("some *de minimis* exposure to a defendant's product is insufficient to establish substantial-factor causation").

32. Here, Plaintiff alleges that he first began using Zantac in 2009 and "used Zantac for many years." Compl. ¶ 15. Yet Plaintiff's only allegation as to Publix is that he "purchased at least some of the Zantac he ingested at a Publix." *Id.* ¶ 70. Based on this vague allegation, Plaintiff could have taken just one dose from one box of Zantac purchased at Publix over the many years that he took the drug. But that is not sufficient to plausibly plead that Zantac was a substantial factor in causing Plaintiff's alleged cancer. Plaintiff thus fails to state a claim against Publix.

33. The court in *Hetzner* evaluated a similar circumstance and held that the *de minimis* use of a defendant's product is not sufficient to establish the causation that Florida law requires. 2010 WL 10076163, at *1. There, the decedent's use of the moving manufacturers'

cigarettes "was limited." *Id.* She did not smoke them "for any substantial period of time and her use could be best described as inconsequential." *Id.* In holding that "this level of product consumption could neither meet the 'but for' test or the 'substantial factor' test," the trial court "totally reject[ed] the supposition that a single cigarette or de minimis use during the course of a ten or twenty year period would have any scientific or legal basis to change the course of any medical outcome in this case." *Id.* The Fifth District Court of Appeal affirmed this holding. 81 So. 3d 641 (Fla. 5th DCA 2012).

34. The fact that no other distributors have been named in other recently filed Zantac actions in the Southern District of Florida further confirms that Plaintiff fraudulently joined Publix in this action. *See Lopez Flores v. Sanofi US Services Inc.*, No. 19-cv-62313-FAM; *Kerzer v. Sanofi US Services Inc.*, No. 19-cv-24092. Indeed, although the same counsel here also filed the complaint on behalf of the plaintiff in *Lopez Flores*, which raises substantially the same factual allegations and claims, that complaint does not name any retailer as a defendant. *See* Compl., *Lopez Flores* (Doc. 1). Nor does Plaintiff here name any other (presumably diverse) distributors from which he may have purchased Zantac. The Court should not permit Plaintiff to evade Defendants' right to removal by selectively naming a local distributor whom Plaintiff allegedly purchased *de minimis* product.

35. Plaintiff's fraudulent joinder of Publix is also reinforced by his shotgun pleading of allegations asserted against all defendants together, but which are plainly targeted only at the Sanofi defendants, not Publix. Shotgun pleading in the manner of Plaintiff's Complaint is routinely recognized as a basis for dismissal. *See Vibe Micro*, 878 F.3d at 1294; *Gazzola*, 2019 WL 3067506, at *1. For example, even though Publix is named only "in its pharmaceutical distribution capacity," Compl. ¶ 37, Plaintiff lumps Publix in with all defendants in alleging that

they "designed, developed, researched, manufactured, packaged, [and] tested" Zantac. *Id.* ¶ 5; *see also*, *e.g., id.* ¶¶ 73-76, 79-80, 87-88, 90-91, 98-100, 102-106, 124-125 (making similar undifferentiated allegations). Even within the strict liability count, Plaintiff broadly alleges that "Defendants knew or had reason to know that said products were defective and unsafe," "knew . . . its [sic] products . . . were and are inherently dangerous and unsafe," and "voluntarily designed Ranitidine products . . . in a dangerous condition." *Id.* ¶¶ 92, 93, 95. But there are no facts pleaded to suggest that Publix had any role whatsoever in designing, researching, or testing the product. Nor does Plaintiff plead any facts suggested that a retailer such as Publix would have notice of any alleged danger. In the context of similar product liability cases, courts have repeatedly found that a plaintiff's mere reference to tortious conduct by the undifferentiated group of all defendants, collectively, supports the application of the fraudulent joinder doctrine. *See In re PPA*, 2002 WL 34418423, at *2-3.

36. So, too, here. Plaintiff's Complaint is inadequate to state a claim against Publix, as his "complaint commonly employs the generic term 'defendants,' [but] the context and nature of the individual allegations make clear that only the drug companies are targeted." *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001). Publix accordingly is fraudulently joined.

### III. The Amount-in-Controversy Requirement Is Satisfied.

37. Plaintiff's claims also satisfy the amount in controversy requirement set forth in 28 U.S.C. § 1332(a).

38. "[A] defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "[T]he defendant's amount-in-controversy

allegation should be accepted when not contested by the plaintiff or questioned by the court," and "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 553-54; *see also*, *e.g.*, *Goldstein v. GFS Mkt. Realty Four, LLC*, 2016 WL 5215024, at *3 (S.D. Fla. Sept. 21, 2016) (similar).

39. Where the complaint does not establish a specific amount in controversy, "it may be facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum[.]" *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation and internal quotation marks omitted). That is the case here.

40. Plaintiff seeks several categories of damages, including compensatory damages, cost of treatment for past and future treatment of Plaintiff's injuries, damages for physical pain and mental anguish, monetary relief to provide medical monitoring, attorney's fees, punitive damages, and exemplary damages. *See* Compl., Prayer for Relief ¶¶ 1-4.

41. The Complaint includes eight causes of action, and alleges that Plaintiff's use of Zantac caused Plaintiff to "suffer serious and dangerous side effects including breast cancer and renal injuries including but not limited to acute kidney injuries, renal insufficiency and/or renal failure, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications." Compl. ¶ 199.

42. Courts have found that allegations of very serious injury in product liability actions, including allegations of cancer and renal failure such as those Plaintiff makes here, support an inference that the amount-in-controversy requirement has been met. *See, e.g.*, *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 241 (5th Cir. 2015) (holding that serious medical

injuries alleged, including cancer, supported deduction that amount-in-controversy requirement was met, and reversing district court's rationale for remanding case); *Gates v. 84 Lumber Co.*, No. CIV.A. 15-0076-WS-N, 2015 WL 2345427, at *1 (S.D. Ala. May 14, 2015) (inferring that amount in controversy requirement was met when alleged injury included cancer); *Mullaney v. Endogastric Sols., Inc.*, No. 11-62056-CIV, 2011 WL 4975904, at *2 (S.D. Fla. Oct. 19, 2011) (same); *Carleton v. CRC Industries, Inc.*, 49 F. Supp. 2d 961, 962 (S.D. Tex. 1999) (same).

43. Similarly, courts have found that the amounts necessary for testing and medical monitoring may satisfy the federal amount-in-controversy requirement, even when those remedies are limited to a single plaintiff. In *Williams v. Alxial Corp.*, 2015 WL 5638080, at *5 (W.D. La. Sept. 24, 2015), for example, the court denied remand after concluding that "plaintiff's medical monitoring claim [would] easily push the relief sought in this case beyond the jurisdictional limit." *Id.* Likewise, in *Rice v. CSX Transp., Inc.*, 2002 WL 35467650, at *8 (N.D. W. Va. Mar. 11, 2002), the court denied remand in a class action after finding that the cost of medical monitoring and research into exposure to organic solvents would exceed $75,000 even "when considering the value of such costs to one plaintiff." *Id.*; *see also*, *e.g.*, *Jovine v. Abbott Labs., Inc.*, 2011 WL 1337204, at *5 (S.D. Fla. Apr. 7, 2011) (denying remand in class action because, "[w]hen the Court adds the cost of such medical monitoring—whatever the cost is—to the cost of the product subject to recall, the amount in controversy requirement is easily exceeded").

44. Furthermore, "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). Punitive damages can be recovered under an intentional fraud claim. *See*, *e.g.*,

*First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 537-38 (Fla. 1987) (punitive damages allowable based on claims sounding in fraud).  Plaintiff alleges such a claim against the Removing Defendants.  *See, e.g.*, Compl. ¶¶ 168-201.

45. On these facts, the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

## PROCEDURAL REQUIREMENTS

46. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b). Defendant Sanofi US Services Inc. was served with the Complaint on September 24, 2019. Defendant Sanofi-Aventis U.S. LLC was served with the Complaint on September 25, 2019. The Removing Defendants are filing this Notice of Removal within 30 days of their receipt through service of the Complaint.

47. Defendant Sanofi S.A. has not been served with the Complaint, and Publix is not properly joined.  Accordingly, the consent of Defendants Sanofi S.A. and Publix to this removal is not required.  28 U.S.C. § 1446(b)(2)(A).

48. The Southern District of Florida is the federal judicial district encompassing the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, where this suit was originally filed.  Venue is therefore proper in this district under 28 U.S.C. §§ 1441(a) and 1446(a).

49. The Removing Defendants are providing Plaintiff with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d), and shall file a copy of this Notice along with a Notice of Filing of Notice of Removal with the Clerk of the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

50. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers and filed in the state court action—as available from the state court docket at the time of filing this Notice—are attached hereto as **Composite Exhibit A**.

51. By filing this Notice of Removal, the Removing Defendants do not waive any defenses that may be available to them and expressly reserve all such defenses.

52. If any question arises regarding the propriety of the removal of this action, the Removing Defendants respectfully request the opportunity to present a brief and be heard at oral argument in support of removal.

53. No previous application has been made for removal.

## CONCLUSION

WHEREFORE, the Removing Defendants give notice that the matter bearing Case No. 2019-027190-CA-01 pending in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida is removed to the United States District Court for the Southern District of Florida, and request that this Court retain jurisdiction for all further proceedings in this matter.

Dated: October 23, 2019            Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Christopher Oprison*
Christopher Oprison, Esq.
Florida Bar No. 0122080)
Primary Email:
christopher.oprison@dlapiper.com
Secondary Email:
monica.tucker@dlapiper.com
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Tel.: (305) 423-8522
Fax: (305) 437-8131

-17-

**ARNOLD & PORTER
  KAYE SCHOLER LLP**

Anand Agneshwar*
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
Email: anand.agneshwar@arnoldporter.com

Daniel S. Pariser*
Paige H. Sharpe*
Elliott C. Mogul*
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Email: daniel.pariser@arnoldporter.com;
paige.sharpe@arnoldporter.com
elliott.mogul@arnoldporter.com

* *pro hac vice* applications forthcoming


*Attorneys for Defendants Sanofi US Services
Inc. and Sanofi-Aventis U.S. LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 23, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served via e-mail this day on all counsel of record and counsel identified on the Service List below.

*Attorneys for Plaintiff*
Joseph L. GalimidiYechezkel Rodal, Esq. (FBN 91210)
yrodal@levincitronrodal.com
Yitzchak Levin, Esq. (FBN 116901)
ylevin@levincitronrodal.com
Michael A. Citron, Esq. (FBN 105083)
mcitron@levincitronrodal.com
Levin Citron Rodal, PLLC
5300 Northwest 33rd Avenue, Suite 219
Fort Lauderdale, Florida 33309
Tel.: (954) 807-9269
Fax: (954) 900-1208

*Attorney for Defendant Publix Super Markets, Inc.*
William Hammond, Esq. (FBN 957811)
William.Hammond@publix.com
Publix Super Markets, Inc.
3300 Publix Corporate Pkwy.
Lakeland, FL 33811-3311
Tel.: (863) 619-4239
Fax: (863) 616-5086

> */s/ Christopher Oprison*
> Christopher Oprison, Esq.
> Florida Bar No. 0122080